ETHERIDGE *et al. v.* VERNOY.

PER CURIAM. Judgment affirmed.

---

'JOSEPH H. ETHERIDGE and others *v.* MILFORD VERNOY.

In contracts for the sale of land, it is the duty of the purchaser to guard himself against defects of title, quantity, incumbrance and the like; if he fail to do so, it is his own folly, for the law will not afford him a remedy for the consequence of his own negligence.

If however, representations are made by the bargainor, which may be reasonably relied upon by the purchaser, and they constitute a material inducement to the contract, and are false within the knowledge of the party making them, and they cause damage and loss to the party relying on them, and he has acted with ordinary prudence in the matter, he is entitled to relief.

( *Walsh* v. *Hall*, 66 N. C. Rep. 237, cited and approved; *Lytle* v. *Bird*, 3 Jones 222; *Fagan* v. *Newsom*, 1 Dev. 20; *Saunders* v. *Hatterman*, 2 Ired, 32; *Credle* v. *Swinde*, 63 N. C. Rep. 305, cited and distinguished from this.)

This was a CIVIL ACTION tried before *Albertson, J.,* at Spring Term, 1873, of BERTIE Superior Court.

The action was brought by the plaintiffs as assignees of a penal bond of the defendant given to one Lewis T. Bond, to recover the residue of the moneys due thereon and for foreclosure of a mortgage executed at the same time, to secure the payment of the bond. The bond was in these words:

"Know all men, by these presents, that I, Milford Vernoy, of the town of Rochester, county of Ulster and State of New York, am held firmly bound unto Lewis T. Bond, of the county of Bertie and State of North Carolina, in the sum of eighteen thousand dollars, to be paid to the said Lewis T. Bond, or to his certain attorney, executors, administrators, or assigns, for which payment well and truly to be made, I bind myself, my heirs, executors or administrators, jointly and severally, firmly by these presents. Sealed this 26th day of February, 1866.

"The condition of this obligation is such that if the above bounden Milford Vernoy, his heirs, executors or administrators, shall and do well and truly pay or cause to be paid unto the above named Lewis T. Bond, his certain attorney, executors, administrators or assigns, the sum of nine thousand dollars in the following payments, viz: two thousand five hundred dollars, with interest, in one year from the date hereof, according to the conditions of a certain mortgage bearing even date herewith given for the better securing of the aforesaid nine thousand dollars, which said sum and interest, if paid without fraud and delay, then the preceding obligation to be void, otherwise to remain in full force and virtue.

Sealed and delivered in the presence of N. Williams, } MILFORD VERNOY, (Seal.")

On said bond were endorsed sundry partial payments as follows:

Received of Milford Vernoy twenty-five hundred dollars on account of this bond. May 15th, 1867.

$2,500.               W. A. MEBANE,
                                    Per L. S. WEBB.
Received the interest also, $182.50     L. S. WEBB,
                                    For W. A. MEBANE.

Received of Milford Vernoy five hundred dollars, on amount due Mrs. H. A. Benbury, as Administratrix. April 10th, 1869.

The bond was on the 18th day of February, 1867, and before any payment become due, in writing, assigned by the said Lewis T. Bond to the plaintiffs for full value paid him without notice of any counter claim or deduction demanded of the amount due then.

Other payments were also made by defendant which are not endorsed on the bond, but are stated in the answer and admitted in the pleadings.

The bond of defendant was secured by a mortgage made by the defendant at the same time and conveying certain lands lying in Bertie and Martin, which was properly proved and registered in those counties, a copy of which accompanies this case marked "A," the separate tracts, are herein stated to contain one thousand acres more or less. The defendant claims an abatement from the amount due on his bond by reason of an alleged deficiency in the number of acres in each of the tracts, which he had bought from said L. T. Bond, which Bond conveyed to him by deed dated .... day of ...., 186., duly proved and registered in said counties, a copy of which is herewith filed and made part of the case. In the deed last named, the tracts are described as containing respectively 1226 and 1,200 acres more or less, and they are the same tracts conveyed by the mortgage. The contract price for both tracts of land was $13,000, of which $4,000 was paid in cash, and the residue secured by the bond and mortgage aforesaid. Certain issues, filed with the record, were submitted to a jury.

It was in evidence that the sale was made and the price agreed upon, upon the representation by the vendor, Bond, that each tract contained a thousand acres, but the execution of the deed was deferred until a survey of the Bertie tract could be made. Before that survey was made the defendant executed his bond for the purchase money and his mortgage securing its payment and delivered them to the plaintiff, when the mortgage was immediately proved and registered. Thereafter a survey of the Bertie tract and the deed from Bond to the defendant executed, describing that tract to contain 1,226 acres,

as reported by the surveyor. The deed from Bond to the defendant was not executed until two months after the execution of the bond and mortgage, though it bears the same date. The Bertie tract in fact contains 1,124 acres only. It did not appear that any survey of the Martin tract had been made as described in Bond's deed, but a survey was made of a tract called the Bond tract, which was proved to contain 714 acres; that the lines as surveyed were part of those designated in the deed of Bond, and that after running out the first line, the second line was not run east, nor along any lines called for, nor marked trees, but directly to the southern terminus of a line of a patent not called for nor in any manner referred to in the deed, that the lines of adjoining tracts called for in running the second line were not found nor regarded, and that if the second line had been run due east to a point opposite and nearest to the Bond and Thompson line, which is called for and known, and then direct to that line the tract would contain nine hundred and forty-five acres, that it had once been thus surveyed and run, and was found to contain 945 acres as stated. The defendant admitted there was no fraudulent misrepresentation made by Bond as to the quantity of the land at any time, nor was there any evidence tending to show that he did not honestly estimate and believe the tracts to contain the full number of acres as described in his deed. At Spring term, 1872, of the Court an order in the case was made directing a survey of the lands and appointing one J. E. Moore, a surveyor, to make the survey in order to an accurate calculation of the acres of each tract; Moore made the survey and maps thereof and returned them to the following Court. These maps represented the two tracts as containing more land than is found by the jury. Moore was not present at the trial. He had been paid for his survey by order of the Court.

The plaintiff proposed to exhibit the maps to the jury as evidence of the quantity of the land as therein estimated by the surveyor. This evidence was objected to by the defendant and ruled out. The plaintiffs excepted thereto.

ETHERIDGE *et al. v.* VERNOY.

The defendant offered evidence of the present value of each tract, with a view to ascertain its value in 1866 when sold. This evidence was objected to by plaintiffs and admitted. Plaintiffs excepted.

The defendant also proposed to prove by one Stone, a witness, that witness during the summer of 1872, on the swamp land in Martin county, cut and carried off a certain number of logs from 16 acres of the land, which logs he hauled to the river bank and thence transported and sold in market, and after deducting expense the proceeds of sale left a profit of about $15 per acre. This evidence was objected to by plaintiff and admitted by the Court. Plaintiffs excepted.

The defendant further proposed to show that there was a large quantity of cypress and ash timber on this Martin tract and its market value upon measurement by the foot, when cut and conveyed to market. This evidence was objected to by the plaintiffs and admitted by the Court. Plaintiffs excepted.

The plaintiffs insisted :

1st. That upon the fact, and notwithstanding the finding upon the issues, they were entitled to recover the entire amount due on the bond.

2d. That if any abatement were to be allowed, it should be only on the deficiency in the acres of the Martin tract, the deficiency in the acres of Bertie tract not warranting any claim for deduction.

3d. That the boundaries of the tract as described in the deed being definite, fixed and well known to the defendant, and he having acquired title to the entire tracts, thus ascertained and defined, the defendant, in the absence of fraud and intentional misrepresentation, is not entitled to any deduction.

4th. That the misrecital of the quantity of the land being accurately ascertained and defined in the deed, furnishes no ground for a claim for deduction.

5th. That the plaintiffs having purchased the bond before maturity and for full price and without notice of the defendant's claim, are not affected thereby.

6th. That if the defendant had an equity or counter claim, he has lost it by his delay to assert it, and cannot now do so against the plaintiff's assignees.

The Court rendered judgment abating the plaintiffs' debt for the whole deficiency in both tracts of land according to the findings of the jury. From the judgment and the ruling of the Court, as set out in the case, the plaintiffs appealed to the Supreme Court.

The following are the exceptions taken by the plaintiffs :

1st. For that the Court admitted evidence to the jury of the present value of the land on which deductions are claimed.

2d. For that evidence was admitted of the extent and kind of timber on the land in the year 1872, and of the value thereof at that time.

3rd. For that evidence was admitted of the timber cut on 15 acres of land in – ——, conveyed to market and sold, of the expenses thereof and net proceeds of sale as affecting the measure of defendant's claim.

4th. For that evidence was admitted of the value in market of such timber by the foot.

5th. For that evidence offered by the plaintiff of the survey and map made and returned to the Court by the surveyor appointed by the Court to make such survey, was rejected.

6th. For that judgment was rendered for an abatement of the plaintiff's debt for the whole deficiency in both tracts, such deficiency being found upon the number of acres mentioned in Bond's deed only.

7th. For that any abatement was allowed in the deficiency in the Bertie tract.

8th. For that the verdict was allowed to stand upon the issue as to the Martin land, when no survey had been made of that tract as described in Bond's deed and without any evidence of its boundaries if run according to such deed.

*Smith & Strong,* (with whom were *Gilliam & Pruden,*) for appellants, filed the following brief:

ETHERIDGE *et al. v.* VERNOY,

This action is brought to recover the balance due on the defendant's bond for the residue of the purchase money for two tracts of land, one lying in the county of Bertie, the other in the county of Martin. The defendant claims an abatement of price for a deficiency in the area of both tracts of land.

When the original parol contract of sale was entered into, the vendor stated to defendant his opinion that each tract contained about 1,000 acres, but no warranty of quantity was given or required, and the opinion was expressed honestly and with no intent to mislead or deceive, and was so understood by defendant.

The defendant executed his deed or mortgage to secure his bond, in which the tracts are severally described as containing 1,000 acres, more or less, before the vendors' deed to him was in fact executed, though the latter bears a prior date. When the mortgage was executed the defendant required the tract in Bertie to be surveyed, and the quantity thereof ascertained before he would accept a deed from his vendor. This was accordingly done, and the surveyor reported the tract to contain 1226 acres. The tract in Martin county was swamp land, and was not surveyed. The deed was thereupon executed by the vendor and the land in Bertie described by distinct metes and bounds, and as containing 1,226 acres, more or less, and the other containing 1200 acres, more or less.

Upon a more accurate survey of the former made since the commencement of the action, it is found to contain 1124 acres. The Martin tract has not been fully surveyed, but is estimated, upon running some of its boundary lines, to contain .... acres.

On the trial a survey and diagram, representing the two tracts of land, made under an order of the Court at a previous term, and filed among the papers in the cause, was produced and offered in evidence by the plaintiff, the surveyor being absent, the evidence was, on objection of defendant, ruled out.

Upon the trial of the issue submitted to the jury as to the amount and measure of damages for the deficiency in the Martin tract, evidence was offered by defendant, and on exception

of plaintiff, admitted by the Court, to prove the value of shingles in a distant market, and the expenses of making and transporting them to such market with a view of showing the value of the timber out of which they were to be manufactured, growing on the land, and of the value of the land as enhanced thereby.

The lands described and conveyed in the vendor's deed are tracts of definite and well known boundaries, and separated and identified, as a corpus, distinct from all other lands, and the erroneous recital of quantity are matter . of description merely, and are corrected by the boundaries set out.

The vendee acquired title to the tracts as thus bounded and under by both parties. It was a purchase *in solido,* an entire sum to be paid for the two tracts, more or less, a sale and purchase at hazard, the vendee being entitled to the excess in the number of acres without increase of price ; the vendor to the whole price without abatement for deficiency. The risks are mutual and voluntarily assumed by both. Though they are not as to the subject matter of this contract and its location and boundary. The vendor parts with his property for a definite sum, not to be increased if the number of acres conveyed turns out to be greater than that supposed ; so the vendee pays a limited sum of money not to be diminished if the number proves to be less.

The principle is fully recognized in its application to contracts of sale of personal property. If one buys from another all the corn in a certain barn, supposed to contain a certain number of bushels, for a fixed price for the whole, the purchase money, is neither increased or reduced by the result of actual measurement, showing the quantity to be either greater or less than the parties estimated. It is a contract of mutual hazard which the parties choose to make, relying upon the correctness of their own judgment instead of a sale by measure, just as they enter into a similar contract about land of definite boundaries, trusting to their own estimates of the quantity embraced within those boundaries. No good reason

is seen why the same principle should not equally apply in both cases, and why the difference in the subject matter of the contracts merely should modify or change their obligations.

In cases of gross error and great discrepancy in the number of acres, amounting to evidence of fraud, or entering as substance into the contract itself, relief has sometimes been granted to the vendee, while in other cases of large differences it has been denied.

Thus a deficiency of two hundred acres in a tract supposed to contain one thousand was not permitted to work an abatement of the contract price. *Caldwell* v. *Craig*, 21 Grattan, Va. Rep. 137. Nor of one hundred out of four hundred and five acres. *Russell* v. *Ceeran*, 8 Leigh, Na. Rep. 9. Nor of one hundred and seventy-nine out of six hundred acres. *Winch* v. *Winchester*, 1 Veas. & Beam, R. 375.

Chancellor KENT, in regard to the description of land conveyed, says:

" The mention of quantity of acres, after a certain description of the subject by metes and bounds, or by other known specification, is but matter of description and does not amount to any covenant or afford ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount. Whenever it appears by *the definite boundaries* or by words of qualification as " more or less " or as " containing by estimation," or the like, that the statement of the quantity of acres in the deed is mere matter of description, and not of the essence of the contract, the buyer takes the *risk of the quantity*, if there be no intermixture of fraud in the case." 4 Kent Com. marg. paging 466.

The same doctrine is enunciated in the cases of *How* v. *Bass*, 2 Mass. 382 ; *Powell* v. *Clark*, 5 Mass. Rep. 357.

In a more recent case in Massachusetts, the Supreme Court, after a full examination of the authorities bearing upon the question, announces its opinion in the following words:

" It has since been declared by a great weight of authority, in accordance, we think, with the soundest reason, that in an

46

agreement for the sale and purchase of land for an entire sum,. either a *description of the land by its boundaries, or the insertion of the words, more or less, or equivalent words* will control a statement of the quantity of land, or of the length of one of the boundary lines, so that neither party will be entitled to relief on account of a deficiency or surplus, unless in case of so great a difference as will naturally raise the presumption of *fraud or gross mistake* in the very essence of the contract." *Noble* v. *Googins,* 99 Mass. Rep. 235.

The true rule controlling in all cases of the kind may be differently stated, thus :

When the purchaser knows precisely what he is buying, an error as to the quality or quantity of the thing bought, in the honest exercise of the vendor's judgment given to the vendee, and in the absence of all fraud, does not entitle the vendee to damages if the purchase money has been paid, nor to an abatement of price if it has not.

The cases in our own Reports, *Leigh* v. *Crump,* 1 Ired. Eq. 399 ; *Gentry* v. *Hamilton,* 3 Ired. Eq. 376 ; and *Wilcoxson* v. *Calloway,* 67 N. C. Rep. 463, properly considered, are ˌreconcilable with the principle declared.

In the first case, the quantity of acres is described as being 1,000, more or less, while in fact there were 700 only, and the other words of description of the land are vague and uncertain. GASTON, Judge, in delivering the opinion of the Court, thus comments upon the question :

" Where there has been an accurate and precise description in the contract *by metes and bounds from which the truth either distinctly appears or could be easily ascertained,* a refer_ence to a supposed quantity might not perhaps be deemed very material; but in that before us *the quantity constitutes a prominent part of the description,* and approaches as near to a certainty as any other part of it."

In the second case there were many small tracts which *are not described by metes and bounds* and in the aggregate they are estimated to contain 1,670 acres, but on a survey fall short

355 acres. The area was therefore an essential element in ascertaining the subject matter of the contract. In the last case the quantity was definitely fixed in the contract at 100 acres. The real quantity was 66 acres. The complaint was taken *pro confesso* against the vendor and shows a special understanding that the vendee should pay $2 per acre, and at that rate for any excess over 100 acres, with a similar deduction from the price for any deficiency. These cases do not impugn the doctrine mentioned in the other authorities cited, but indirectly recognize and affirm it.

The action of deceit will lie for false and fraudulent representations as to land, and the vendee's remedies are as full as in the case of personal property, and why should not his right to redress be subject to the same limitations in the one case as in the other? *Pettijohn* v. *Williams*, 1 Jones 145.

II. It is further submitted that the map and diagram prepared by the surveyor and filed were proper evidence to instruct the jury as to the location of the lines and natural objects mentioned in the deeds. The map is in fact but a representation upon paper of the tracts of land, which cannot be personally inspected and examined by the jury.

III. The evidence offered and on objection admitted to prove the damages or deductions was inadmissible. *Jones* v. *Gooday*, 8 M. & W. Ex. Rep. 146 ; *Burnett* v. *Thompson*, 13 Ire Rep. 146.

The proper measure of damages, if the defendant is entitled to any for the deficiency in the lands, is ascertained by estimating the value of the separate tracts upon the basis of the purchase money being the value of both, and then determining the ratio of the deficiency to the number of acres of each tract as stated in the deed. Damages cannot be arrived at by blending the two tracts into one, and deducting from the deficiency in both from the joint price of both. This is only admissible if the two tracts were of equal value per acre, of which there is no proof.

*Barnes* and *W. W. Peebles*, contra.

BYNUM, J.   In contracts for the sale of land, it is the duty
of purchasers to guard themselves against defects of title,
quantity, encumbrances and the like ; if they fail to do so, it is
their own folly, for the law will not afford them a remedy for
the consequences of their own negligence.   But if representa-
tions are made by the bargainor, which may reasonably be
relied on by the purchaser, and they constitute a material in-
ducement to the contract, and are false within the knowledge
of the party making them, and they cause damage and loss to
the party relying on them, and he has acted with ordinary
prudence in the matter, he is entitled to relief.   *Walsh* v. *Hall*,
66 N. C. 233.

The maxim of *caveat emptor* is a rule of the common law,
and applies as well to contracts of purchase of real as personal
property, and is adhered to in Courts of Equity as well as of
law, in the absence of fraud.   The purchaser's only right of
relief is to be found in the covenants in his deed where there
is no fraud.   *Rawle* 459.   If he has taken no covenants and
there is no fraud vitiating the contract, he has no relief for de-
fects in quantity, quality or incumbrances, for it was his own
folly to accept such a deed when he could, and it was his duty
to protect himself by covenants.   In *Lytle* v. *Bird*, 3 Jones
222, it was held that an action of deceit would not lie for a
fraudulent representation upon the sale of a tract of land, as
to where certain lines run, and as to particular lands being in-
cluded in the deed.   There NASH, C. J., says, " if the plaintiff,
by using reasonable diligence, could have ascertained the truth,
if was his own folly to trust to the representations of the ven-
dor."   The same principle is announced in *Fagan* v. *Newsom*,
1 Dev. 20, and in *Saunders* v. *Hatterman*, 2 Ired. 32.
Another case in point is *Credle* v. *Swindell*, 63 N. C. 305,
where it was held that an action for deceit would not lie for
the vendee against the vendor for false representations by the
latter, as to the quantity of land sold.   There he *falsely* as-

serted the tract to contain four hundred and ten acres, when in fact there were two hundred and eighteen acres only. In delivering the opinion of the Court, SETTLE, J., says, " if the plaintiff has sustained loss, it is by his own negligence ; he has not exercised that diligence which the law expects of a reasonable and careful person, but was wilfully ignorant of that which he ought to have known. He might have ascertained the fact by an actual survey or taken a covenant as to quantity. *Vigilantibus non dormientibus jura subveniunt.*" It is thus seen that even fraud in the misrepresentation will not entitle the vendee to relief, unless that fraud is such that the plaintiff could not have reasonably provided against it under the maxim, *caveat emptor.*

It is admitted in our case, that no fraud was intended or used, but that the vendor fully believed his statements as to the quantity of land, to be true. So, according to the entire current of decisions in our State, the defendant is entitled to no abatement in the price, for a deficiency in quantity. There must be fraud and damage. Adams' Eq. 176 ; 2 Kent's Com. 486–7.

Bond, the vendor in this case, at the time the contract of sale was made, stated that the quantity of land in each tract was a thousand acres, and the trade was made on that basis. It turned out, according to the finding of the jury, that one tract contained 1124 acres, and the other 714 acres, and the two tracts together showed a deficiency of 162 acres. It is not set up in the answer or shown by any evidence that quantity was the material or any inducement to the trade, and the fact that the defendant occupied and used the lands, without complaint or enquiry, for eight years succeeding his purchase, and until he was sued for the purchase money, affords a strong presumption that the quantity was not the material consideration with him. As we hold that the defendant is not entitled to the abatement and sum found by the jury, it is unnecessary to consider the other questions presented in the exceptions.

The judgment is reversed and judgment rendered here for the plaintiffs. It is referred to the Clerk to ascertain the balance due on the bond.

PER CURIAM.   Jungment reversed and judgment for the plaintiffs.